# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

**CODY PERKINS,**

     Plaintiff,

v.

**ADVOCATE HEALTH, INC.; NAVICENT HEALTH, INC.; ADVOCATE HEALTH, LLC;**

     Defendants.

Case No.

---

## COMPLAINT FOR DAMAGES AND EMERGENCY INJUNCTIVE RELIEF

---

Plaintiff Cody Perkins ("Cody"), by and through his undersigned counsel, hereby files this Complaint and Request for Emergency Injunctive Relief against Defendants Advocate Health, Inc., Advocate Health, LLC, and Navicent Health, Inc."), and shows this Court as follows:

## PARTIES

1.

Cody is a resident of Georgia, residing at 2969 Westbury Drive Decatur, GA 30033.

2.

Defendant Advocate Health, Inc. is a corporation formed under the laws of Delaware with a principal place of business in Charlotte, North Carolina.

3.

Defendant Advocate Health, LLC is a limited liability company formed under the laws of North Carolina with a principal place of business in Charlotte, North Carolina.

4.

Defendant Navicent Health, Inc. is a corporation formed under the laws of Georgia with a principal place of business in Macon, Georgia.

## JURISDICTION AND VENUE

5.

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the claims for relief under the Americans with Disabilities Act (42 U.S.C. § 12101 et seq.) and the Rehabilitation Act (29 U.S.C. § 794) arise under the laws of the United States.

6.

This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 because such claims are so related to the federal claims that they form part of the same case or controversy.

7.

This Court has personal jurisdiction over Navicent Health, Inc. because it is a Georgia corporation with its principal place of business in Georgia and pursuant to O.C.G.A. § 9-10-91 because it committed tortious acts within Georgia.

8.

This Court has personal jurisdiction over Navicent Health, Inc. because it committed tortious acts within Georgia.

9.

The complaint specifically asserts personal jurisdiction over the North Carolina-based Advocate Health, LLC and Advocate Health, Inc. under Georgia's Long-Arm Statute (O.C.G.A. § 9-10-91).

10.

Venue is proper in this District pursuant to 28 U.S.C. § 1391. While a substantial part of the events giving rise to this claim occurred in Macon, Georgia, Cody seeks the oversight of this Court in the Interests of Justice pursuant to 28 U.S.C. § 1404(a) and § 1406(a). Cody asserts that the Middle District of Georgia is a prejudicial forum due to the Defendants' pervasive economic, social, and political influence within the Macon-Bibb County community. As the region's largest employer and primary healthcare provider, the Defendants' systemic influence creates an inherent risk of local bias that threatens the Cody's right to a neutral and impartial jury.

11.

Furthermore, because this action involves allegations of False Imprisonment and the Unlawful Use of Local Law Enforcement, a neutral forum outside of the Defendants' immediate sphere of influence is necessary to ensure the integrity of the judicial process.

12.

In the event this Court determines that venue is improper in the Northern District, Plaintiff respectfully requests that the Court transfer this action to the Middle District of Georgia pursuant to 28 U.S.C. § 1406(a) rather than dismiss the action, to avoid further irreparable harm to the Plaintiff's health and recovery.

**FACTUAL BACKGROUND**

13.

On March 6, 2026, Plaintiff was admitted to Atrium Health Navicent in Macon, Georgia shortly after surviving a catastrophic car accident.

14.

Plaintiff was twenty-one at the time of the accident and turned twenty-two on March 8, 2026.

15.

During admission, Cody underwent bilateral lower limb amputations, an extremely rare and traumatizing surgical outcome.

16.

When Cody woke up from surgery, the hospital staff did not share the nature of Cody's injuries with him.

17.

Upon information and belief, on March 6, 2026, while Plaintiff was unconscious, Defendants' staff documented that Plaintiff provided consent for medical procedure after the emergency surgery and he received no opportunity to notify any of his family members. No member of his family learned of his condition for seven days, until March 13th when a family member discovered the accident in a news article.

18.

Upon information and belief, Plaintiff was visited by Michael Lyles who entered Plaintiff's room while he slept and proceeded to call the police up to his hospital room to forcibly remove his gown and put him in a paper gown after he refused treatment because Michael Lyles refused to explain hospital policy with Plaintiff.

19.

Upon information and belief, on or around March 10, 2026, Plaintiff was placed under a per se psychiatric hold pursuant what Lynn Crews—the charge nurse—described as hospital policy.

20.

Shortly after, two law enforcement officers used physical force against Plaintiff to effectuate a gown change. When Cody asked for the clinical justification for the psych hold, staff, his charge nurse, and the attending physician failed to provide him with any answer.

21.

Defendants ordered the use of police force to change Plaintiff's clothing without the consent of Plaintiff and removed the telephone from his hospital room.

22.

The use of police force to change a hospitalized patient's clothing was excessive and unreasonable.

23.

On the morning of March 16, 2026, Plaintiff underwent a psychological evaluation and the evaluating clinician cleared Plaintiff as mentally stable.

24.

Despite a finding of mental stability, Defendants continued to detain Plaintiff without providing a documented clinical justification for the continued detention.

25.

The hospital instituted the detention of Plaintiff under the guise Advocate Health's high-risk suicide watch policy rather than involuntary treatment or psychiatric holder under Georgia law.

26.

On or about March 15, 2026, Cody's counsel traveled to Macon and invoked Plaintiff's statutory right to request a transfer to a private rehabilitation facility and was arrested by hospital police while visiting Cody and requesting medical records.

27.

On March 15, 2026, Plaintiff's counsel requested emergency intervention from the Macon-Bibb County Sheriff's Office to address the ongoing false imprisonment of Cody Perkins. The Sheriff's Office refused to dispatch an officer, citing a lack of jurisdiction created by the Defendants' maintenance of a private police force within the facility. This jurisdictional barrier left the Plaintiff trapped in a facility where the Defendants exercise both clinical and police authority without external accountability.

28.

Cody requested transfer to either Kessler Institute for Rehabilitation or Columbia Rehabilitation and Regenerative Medicine.

29.

Cody's counsel made a formal request for transfer to the staff, charge nurse, house nurse, and on-call trauma physician.

30.

Upon information and belief, private facilities were ready to accept Cody's transfer request.

31.

Moreover, Cody's personal representatives were prepared to provide proof of payment and obtain insurance coverage.

32.

Cody met all requirements for transfer under Georgia law.

33.

On March 15, 2026, Plaintiff spoke with an on-call trauma physician who refused to sign an order approving Plaintiff's medical transfer.

34.

The on-call trauma physician refused to provide written reasoning for refusing to approve the transfer.

35.

On Sunday, March 15, 2026, the on-call trauma doctor admitted to Cody's counsel that he was unfamiliar with Plaintiff's chart and that he could not sign the transfer order without superior approval.

36.

During this telephone call, a physician in the background was heard urging the on-call doctor to hang up.

37.

Defendants used the Trauma Level 1 designation as an indefinite justification to delay Cody's transfer.

38.

On March 16, 2026, Case Management at Atrium Health Navicent attempted to initiate a standard discharge for Cody, despite his family's objection.

39.

Cody and his Power of Attorney explicitly rejected a standard discharge.

40.

Cody and his Power of Attorney demanded a statutory transfer to a rehabilitation facility. An true and correct copy of the statutory transfer demand is attached hereto as **Exhibit A**.

41.

Defendants attempted to discharge Cody instead of facilitating the statutory transfer that he requested.

42.

On March 17, 2026, eleven days after admission, a nurse informed Cody for the first time that he has an iron rod holding his femur in place.

43.

This was the first time Defendants disclosed to Cody that he had undergone this major surgical intervention.

44.

Information regarding the iron rod is material to Cody's rehabilitation and future prosthetic eligibility.

Without immediate intensive inpatient rehabilitation for this hardware, Cody could be rendered ineligible for prosthetics in the future.

45.

Cody has not been bathed or washed since March 6, 2026, despite having opened surgical sites., and his bedsheets were changed for the first time on March 21, 2026.

46.

Upon information and belief, the lack of basic hygiene creates an ongoing major infection risk for Cody.

47.

On March 17, 2026, Cody experienced severe pain from a staple in his quadricep and was screaming for help due to the pain from the staple.

48.

Despite multiple reports to nursing staff, Cody received no assistance for an extended period. Hospital staff finally removed the staple after Cody's lawyer sent a demand for immediate attention to Defendant's legal counsel.

49.

On March 16, 2026, Cody's attorney submitted a formal demand for complete, unredacted medical records. (Ex. A)

50.

The demand specifically requested surgical and procedure records, physician progress notes, consultation reports, specific orders for suicide watch or psychiatric hold, nursing documentation, mental health legal documents, and electronic metadata.

51.

The demand also requested electronic metadata and audit trails for entries regarding consent allegedly given by Plaintiff while he was unconscious on March 6, 2026.

52.

Defendants' policy is that medical records requests take thirty days to fulfill. Defendant's counsel also stated that legal counsel must review the medical records for quality assurance before they are released.

53.

Notwithstanding the urgent health risks that Plaintiff faces, Defendants have failed to provide the requested medical records and electronic metadata within a reasonable time required by law.

54.

The notes entered in Plaintiff's medical chart regarding the March 16, 2026 psychological evaluation conflicted materially with statements made during the evaluation in the presence of Plaintiff's attorney.

55.

Upon information and belief, Plaintiff's chart notes were altered to support continued detention despite Plaintiff being cleared as mentally stable.

56.

On March 15, 2026, Plaintiff executed a Durable Power of Attorney designating Xantha Burghardt as his Authorized Health Care Agent.

57.

Plaintiff retained full medical decision-making capacity throughout his hospitalization.

58.

On March 16, 2026, Plaintiff's attorney issued a preservation notice demanding that Defendants preserve all video surveillance footage from unit hallways and patient room entrance for the period of March 6, 2026 to March 16, 2026.

59.

The preservation notices specifically requested footage involving the use of police force to effectuate the gown change.

60.

Defendants are attempting to have Plaintiff discharged immediately without having provided Plaintiff's medical records, which are essential to determine the best decision regarding Plaintiff's care.

**CLAIMS FOR RELIEF**

**Count I - Violation of the Americans with Disabilities Act**
**(against all Defendants)**

61.

Plaintiff incorporates paragraphs 9 through 11, 24 through 28, and 33 through 40 as if fully set forth herein.

62.

Plaintiff is a qualified individual with a disability.

63.

Plaintiff has bilateral lower limb amputations, which constitute a disability.

64.

Plaintiff is otherwise qualified to receive specialized inpatient rehabilitation services.

65.

Upon information and belief, Defendants continue to exclude Plaintiff from participation in or deny Plaintiff the benefits of services, programs, or activities.

66.

Defendants excluded Plaintiff from participation in specialized rehabilitation services by refusing to facilitate his statutory transfer request to Kessler Institute for Rehabilitation or Columbia Rehabilitation and Regenerative Medicine.

67.

Instead of facilitating transfer to specialized rehabilitation, Defendants are attempting to discharge Plaintiff to an unequipped home environment.

68.

Such exclusion or denial was by reason of Plaintiff's disability.

69.

The specialized rehabilitation services are necessary for Plaintiff's recovery from bilateral lower limb amputations.

70.

Without specialized rehabilitation, Plaintiff could be rendered ineligible for prosthetics in the future.

71.

Defendants' refusal to facilitate transfer to specialized rehabilitation while attempting to force discharge to home violates the requirement to provide services in the most integrated setting appropriate to Plaintiff's needs.

72.

As a direct and proximate result of Defendants' violations, Plaintiff has suffered and continues to suffer damages.

**Count II - Violation of the Rehabilitation Act**
**(against all Defendants)**

73.

Plaintiff incorporates paragraphs 9 through 11 and 24 through 28 as if fully set forth herein.

74.

Plaintiff is a qualified individual with a disability.

75.

Plaintiff has bilateral lower limb amputations, which constitute a disability.

76.

Defendants excluded Plaintiff from participation in or denied Plaintiff the benefits of services, programs, or activities.

77.

Defendants excluded Plaintiff from specialized rehabilitation services by refusing to facilitate his transfer to appropriate facilities while under a per se statutory hold.

78.

Defendants' services, programs, and activities receive federal financial assistance.

79.

Such exclusion or denial was solely by reason of Plaintiff's disability.

80.

The exclusion was based on Plaintiff's need for specialized rehabilitation services related to his bilateral lower limb amputations.

81.

As a direct and proximate result of Defendants' violations, Plaintiff has suffered and continues to suffer damages.

**Count III - Denial of Equal Access to Medical Information.**
**(against all Defendants)**

82.

Plaintiff incorporates paragraphs 13, 45 through 49 and 54 through 56 as if fully set forth herein.

.

Plaintiff is entitled to access his electronic medical records and Plaintiff's counsel is authorized to access Plaintiff's medical records and review them.

83.

Plaintiff and Plaintiff's counsel made a valid request for access to his electronic medical records.

84.

On March 16, 2026, Plaintiff's attorney submitted a formal demand for complete, unredacted medical records including electronic metadata and audit trails.

85.

The request was accompanied by a HIPAA authorization.

86.

Defendants failed to provide the requested records within a reasonable time required by law.

87.

Defendants claimed a thirty-day timeline for production while simultaneously asserting a health care summary would be available immediately upon discharge.

88.

At a bedside care planning meeting with the hospital physical therapist, physician, charge nurse, and patient care navigators to discuss Cody's condition and a path forward.

89.

Defendants failed to provide the requested electronic metadata for consent entries allegedly made while Plaintiff was unconscious.

90.

Plaintiff is presently suffering harm by Defendants' failure to provide the records.

91.

The failure prevented Plaintiff from obtaining documentation necessary to evaluate his care, obtain second opinions, and pursue legal remedies.

92.

The failure prevented Plaintiff from obtaining evidence of the falsification of consent while he was unconscious.

93.

As a direct and proximate result of Defendants' violations, Plaintiff has suffered and continues to suffer damages.

**Count IV - False Imprisonment in Violation of O.C.G.A. § 51-7-20**
**(against all Defendants)**

94.

Plaintiff incorporates paragraphs 14 through 23 and 50 through 51 as if fully set forth herein.

95.

Defendants confined and restrained Plaintiff.

96.

Plaintiff was confined at Atrium Health Navicent from March 6, 2026, through at least March 18, 2026.

97.

On March 16, 2026, Plaintiff was cleared as mentally stable upon psychological evaluation.

98.

Despite being cleared as mentally stable, Defendants continued to detain Plaintiff.

99.

The confinement was unlawful.

100.

After Plaintiff was cleared as mentally stable, there was no legal basis for an internal psychiatric detention.

101.

Defendants continued to detain Plaintiff without documented clinical justification.

102.

Defendants utilized a high-risk suicide watch policy to justify continued restriction of Plaintiff's autonomy without statutory authority.

103.

Plaintiff invoked his statutory right to transfer pursuant to O.C.G.A. 37-3-100, but Defendants refused to facilitate the transfer.

104.

Defendants' refusal to honor Plaintiff's statutory transfer rights rendered the continued confinement unlawful.

105.

Plaintiff was aware of the confinement.

106.

Plaintiff did not consent to the confinement.

107.

Plaintiff did not consent to continued detention after being cleared as mentally stable.

108.

Plaintiff explicitly demanded transfer to a rehabilitation facility rather than continued confinement.

109.

As a direct and proximate result of Defendants' unlawful detention, Plaintiff has suffered and continues to suffer damages.

**Count V - Violation of Patient Transfer Rights Under O.C.G.A. § 37-3-100**
**(against all Defendants)**

110.

Plaintiff incorporates paragraphs 24 through 37 as if fully set forth herein.

111.

Plaintiff is a patient in a trauma level 1 healthcare facility.

112.

Plaintiff is a patient at Atrium Health Navicent operated by Defendants.

113.

Plaintiff has requested that an application for transfer to a private facility.

114.

On or about March 15, 2026, Plaintiff applied for transfer to private rehabilitation facilities, specifically Kessler Institute for Rehabilitation and Columbia Rehabilitation and Regenerative Medicine.

115.

The transfer is necessary for the needs of Plaintiff or efficient utilization of the facility.

116.

The transfer was necessary for Plaintiff's needs given his bilateral lower limb amputations requiring specialized rehabilitation and traumatic brain injury.

117.

Without immediate intensive inpatient rehabilitation, Plaintiff could be rendered ineligible for prosthetics in the future.

118.

The transfer was necessary for efficient utilization of the facility given that Plaintiff was cleared as mentally stable and no longer required acute trauma care.

119.

Defendants had a duty to make efforts to facilitate the transfer.

120.

Under O.C.G.A. § 37-3-100, when the needs of a patient or the efficient utilization of a facility require a transfer, the facility has a duty to facilitate such transfer.

121.

Plaintiff met all requirements for transfer: he submitted a formal application, private facilities were ready to accept him, and proof of payment. Defendants refused to facilitate the transfer.

122.

The on-call trauma physician refused to sign the transfer order.

123.

The on-call trauma physician refused to provide written reasoning for the refusal.

124.

On Sunday, March 15, 2026, the on-call trauma doctor admitted to Plaintiff's counsel that he was unfamiliar with Plaintiff's chart and could not sign the order without superior approval.

125.

Defendants used the Trauma Level 1 designation as justification to delay transfer despite Plaintiff being medically stable.

126.

Plaintiff was harmed by the refusal.

127.

The refusal delayed Plaintiff's access to specialized rehabilitation services necessary for his recovery.

128.

The delay increased the risk that Plaintiff would be rendered ineligible for prosthetics.

129.

The delay caused Plaintiff to remain in an environment where he was not receiving appropriate care for his condition.

130.

As a direct and proximate result of Defendants' violation of Plaintiff's statutory transfer rights, Plaintiff has suffered and continues to suffer damages.

**Count VI - Assault and Battery in Violation of O.C.G.A. § 51-1-14**
**(against all Defendants)**

131.

Plaintiff incorporates paragraphs 14 through 18 and 54 through 55 as if fully set forth herein.

132.

Defendants intentionally caused harmful or offensive contact with Plaintiff.

133.

During Plaintiff's hospitalization, law enforcement officers, acting at the direction or with the acquiescence of Defendants, used physical force against Plaintiff to effectuate a gown change.

134.

The use of police force to change a hospitalized patient's clothing was excessive and unreasonable.

135                              .

The contact was harmful and offensive.

136.

Plaintiff did not consent to the contact.

137.

Plaintiff did not consent to the use of force against him.

138.

The force used was retaliatory and initiated by the Defendants' nursing staff—including Michael Lyles and Lynn Crews—who sought to restrain Plaintiff against his will despite his express objections.

139.

Plaintiff was harmed by the contact.

140            .

The use of force caused physical harm to Plaintiff.

141.

The use of force caused emotional and psychological harm to Plaintiff and he suffers from pervasive distress while he remains in the hospital.

142.

As a direct and proximate result of Defendants' assault and battery, Plaintiff has suffered and continues to suffer damages.

**Count VII - Negligence - Failure to Provide Appropriate Medical Care**
**(against all Defendants)**

143.

Plaintiff incorporates paragraphs 11 and 38 through 44 as if fully set forth herein.

144.

Defendants owed a duty of care to Plaintiff.

145.

As Plaintiff's healthcare providers, Defendants owed Plaintiff a duty to provide care consistent with the applicable standard of care.

146.

Defendants breached that duty.

147.

On March 17, 2026, at 8:45 p.m., a nurse brought a disinfectant into the unit for bandage changes.

148.

Harsh chemicals such as disinfectants are contraindicated for Plaintiff's condition.

149.

Plaintiff's condition requires only gentle solutions such as saline or water for wound cleansing.

150.

The use of disinfectant on Plaintiff's wounds fell below the applicable standard of care.

151.

Plaintiff had not been bathed or washed for eight days despite having open surgical sites.

152.

The failure to provide basic hygiene for a patient with open surgical sites fell below the applicable standard of care and created a major infection risk.

153.

On March 17, 2026, Plaintiff experienced severe pain from a staple in his leg and was screaming for help.

154.

Despite multiple reports to nursing staff, Plaintiff received no assistance for an extended period.

155.

The failure to respond to a patient in severe pain fell below the applicable standard of care.

156.

Defendants failed to disclose for eleven days that Plaintiff has an iron rod holding his femur in place.

157.

Information regarding major surgical interventions is material information that must be disclosed to patients.

158.

The failure to disclose this material information fell below the applicable standard of care.

159.

The breach caused injury to Plaintiff.

160.

The use of contraindicated disinfectant caused or risked causing harm to Plaintiff's wounds.

161.

The failure to provide basic hygiene caused or risked causing infection.

162.

The failure to respond to Plaintiff's severe pain caused prolonged suffering.

163.

The delayed disclosure of the iron rod prevented Plaintiff from making informed decisions about his rehabilitation and prosthetic eligibility.

164.

Plaintiff suffered damages.

165.

Plaintiff is currently suffering physical harm, increased risk of infection, pain and suffering, and loss of opportunity for timely rehabilitation.

166.

As a direct and proximate result of Defendants' negligence, Plaintiff has suffered and continues to suffer damages.

**COUNT VIII – DECEPTIVE TRADE PRACTICES AND ILLEGAL CORPORATE STRUCTURE**
**(Against All Defendants)**

167.

Plaintiff incorporates paragraphs 29 through 33 as if fully set forth herein.

168.

Defendants operate a "cross-market" health system that functions as a multi-state conglomerate, specifically integrating the quasi-governmental Charlotte-Mecklenburg Hospital Authority (d/b/a Atrium Health) with the private enterprise of Advocate Aurora Health to form Defendant Advocate Health.

169.

Defendants Atrium Health Navicent has undergone a systematic rebranding and administrative transition that erases local clinical autonomy in favor of a centralized, out-of-state corporate hierarchy.

170.

Defendants have created an illegal and deceptive hybrid entity that utilizes this complex corporate structure to engage in "regulatory arbitrage"—claiming the sovereign control of a public authority to justify the involuntary detention of patients while simultaneously applying the "internal policies" of a private, out-of-state corporation to bypass mandatory Georgia statutes.

171.

Defendants is engaged in deceptive trade practices by representing to the public—and specifically to Plaintiff—that Atrium Health Navicent is a local provider of comprehensive trauma and rehabilitation services, while intentionally concealing and failing to offer its own "Amputee Rehabilitation Program" to Plaintiff during his time of acute need.

172.

Upon information and belief, Defendants' deceptive use of the "Trauma Level 1" designation as an indefinite barrier to transfer was a pretextual administrative tactic used to prioritize the "administrative scale" and "negotiation leverage" of the national conglomerate over the individual statutory rights of a Georgia patient.

173.

The de-localization of care—exemplified by a local on-call physician requiring "superior approval" from a centralized "background physician"—demonstrates a deceptive trade practice where clinical decisions are dictated by out-of-state corporate interests rather than the applicable Georgia standard of care.

174.

As a direct and proximate result of this illegal and deceptive hybrid structure, Plaintiff was denied his autonomy, his right to an expedited medical transfer, and his future eligibility for prosthetics.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

1. Issue an emergency preliminary injunction pursuant to Fed. R. Civ. P. 65 requiring Defendants to immediately facilitate Plaintiff's transfer to a private rehabilitation facility and prohibiting Defendants from discharging Plaintiff without first facilitating the requested transfer;

2. Issue an emergency preliminary injunction requiring immediate release of Plaintiff's medical records, or in the alternative, allow on-site review of the medical records by Plaintiff's counsel;

3. Award Plaintiff compensatory damages against all Defendants for all losses suffered, including pain and suffering, emotional distress, secondary trauma from delayed disclosure, infection risk from improper wound care and lack of hygiene, loss of prosthetic eligibility due to lack of specialized rehabilitation, medical expenses, additional rehabilitation costs, prosthetic device costs, and future medical care, in an amount to be proven at trial but exceeding seventy-five thousand dollars;

4. Award Plaintiff punitive damages against all Defendants pursuant to O.C.G.A. § 51-12-5.1 in an amount sufficient to punish Defendants for their willful misconduct, malice, wantonness, oppression, and entire want of care raising the presumption of conscious indifference to consequences, including documenting consent while Plaintiff was unconscious, altering medical records to support continued detention, using police force to effectuate a gown change,

refusing to facilitate statutory transfer rights despite mandatory statutory duties, using a high-risk suicide watch policy to circumvent statutory requirements, and failing to provide basic care and hygiene, in an amount to be determined based on Defendants' financial resources and the severity of their conduct;

5. Award Plaintiff reasonable attorneys' fees and costs pursuant to 42 USCS § 1988 and 29 USCS § 794a for the federal civil rights claims;

6. Enter a declaratory judgment pursuant to 28 USCS § 2201 declaring that:

    a) Defendants violated Plaintiff's statutory transfer rights;

    b) Defendants violated Plaintiff's right to access medical records;

    c) Defendants violated Plaintiff's rights under the Americans with Disabilities Act and the Rehabilitation Act;

    d) Defendants falsified Plaintiff's medical records;

    e) Defendants unlawfully detained Plaintiff;

    f) Defendants engaged in deceptive trade practices;

7. Enter a permanent injunction:

    a) Prohibiting Defendants from discharging Plaintiff without first facilitating his transfer to a private rehabilitation facility;

    b) Requiring Defendants to produce all requested medical records within ten days;

    c) Requiring Defendants to implement proper wound care protocols for Plaintiff;

8. Award Plaintiff such other and further relief as this Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

**THE BROCK LAW GROUP, P.C.**

By: /s/ Christopher Brock
Christopher Brock
Georgia Bar No. 807015

5701 Mableton Parkway SW,
Suite 101
Mableton, Georgia 30126
770-726-3798
cbrock@brocklawgroup.net
Attorney for Plaintiffs Cody Perkins

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

**CODY PERKINS,**

            Plaintiff,

v.

                              Case No.

**NAVICENT HEALTH, INC.**

            Defendants.

---

### CERTIFICATE OF SERVICE

---

I hereby certify that a true and correct copy of the foregoing Complaint for Damages and Injunctive Relief was filed with the Clerk of Court and that I have caused a copy of same to be personally served Defendants at the following addresses:

**Navicent Health, Inc.**
**c/o CT Corporation System**
289 S. Culver St.
Lawrenceville, GA 30046

**Advocate Health, LLC**
160 Mine Lake Ct Ste 200
Raleigh, NC 27615

**Advocate Health, Inc.**
160 Mine Lake Ct Ste 200
Raleigh, NC 27615

This 19th day of March 2026.

                                       By: */s/ Christopher Brock*
                                          Christopher Brock

## VERIFICATION

PERSONALLY APPEARED before the undersigned attesting officer duly authorized to administer oaths in the State and County aforesaid, Cody Perkins, who, on oath, states that the facts contained in the foregoing Plaintiff.'s Complaint f.or Damages and Injunctive Relief. are true and correct to the best of affiant's information and belief.

_____
AFFIANT

Cody Perkins

Sworn to and subscribed before me,
this 19th day of MARCH, 2026

_____
NOTARY PUBLIC

HELEN WALKER LAW
Notary Public, Georgia
Bibb County
My Commission Expires
July 04, 2026

My Commission Expires: July 4th 2026